**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------------x
MICHAEL JOSEPH,                      :
                                     :
            Plaintiff,               :
                                     :
v.                                   :      Civil No. 14cv424 (AWT)
                                     :
UNITED TECHNOLOGIES CORPORATION,     :
SIKORSKY AIRCRAFT CORPORATION, and   :
PRATT & WHITNEY,                     :
                                     :
            Defendants.              :
-------------------------------------x
```

**RULING ON SIKORSKY AIRCRAFT CORPORATION'S MOTION TO DISMISS**

Plaintiff Michael Joseph alleges that defendant Sikorsky

Aircraft Corporation ("Sikorsky") discriminated against him on

the basis of race and age in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Count One), the

Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et

seq. (Count Two), and the Connecticut Fair Employment Practices

Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 et seq. (Count Four).

The plaintiff also alleges intentional infliction of emotional

distress (Count Three) against Sikorsky.

Sikorsky moves to dismiss Counts One, Two and Four pursuant

to Federal Rule of Civil Procedure 12(b)(1), arguing the

plaintiff has failed to exhaust his administrative remedies.

Sikorsky also moves to dismiss Count Three pursuant to Federal

Rule of Civil Procedure 12(b)(6).  For the reasons set forth

below, the motion is being granted in part and denied in part.

I.    **Factual Allegations**

"The [amended] complaint, which [the court] must accept as

true for purposes of testing its sufficiency, alleges the

following circumstances" concerning Sikorsky.  Monsky v.

Moraghan, 127 F.3d 243, 244 (2d Cir. 1997).

The plaintiff is black.  He was hired by Sikorsky in 2000.

The plaintiff alleges that in 2009, a management position became

vacant.  The plaintiff expressed his interest in the position to

his program manager, Donald Rogers ("Rogers"), who is a

Caucasian male.  Rogers discouraged him from applying because

there were no black managers in the Embedded Software group.

The plaintiff applied for the position anyhow and was told by

the head of the department, John Valeeuwen, who is a Caucasian

male, that he was the best qualified candidate.  The plaintiff's

name was sent along with the names of three other candidates for

four open positions to Human Resources for approval.  "Instead

of doing a simple 'change of status[,'] Christine Cassina

(Caucasian female, Human Resources) talked to all the candidates

and denied the Plaintiff['s] promotion while approving all the

others."  (Amended Complaint, Doc. No. 8 ("Am. Compl."), ¶ 22.)

The plaintiff asked Valeeuwen why his promotion was not

approved.  Valeeuwen could not provide a reason but encouraged

2

the plaintiff to drop his bid for the management position.  The
plaintiff complained to Valeeuwen and stated that the obvious
reason why he was denied the promotion was because of his race.

Subsequently, the plaintiff assumed responsibility for the
Commercial and International Military Flight Control Software
group, but without a salary increase.  Thereafter, the plaintiff
experienced the following harassment and interference by
Sikorsky:

- denying him access to a computer server that converts
  design from MatrixX to Pictures-to-Code, forcing the
  plaintiff to seek the help of co-workers who had a lower
  or no security clearance;

- remotely accessing his computer and manipulating or
  modifying the plaintiff's work product without his
  permission;

- subjecting the plaintiff to public humiliation in the
  presence of his co-workers, including yelling at him and
  calling him lazy and a slacker;

- accusing the plaintiff of stealing a laptop computer; and

- insinuating that the plaintiff stole electronics
  equipment.

In 2010, Rogers gave the plaintiff his first bad
performance review.  The plaintiff was the only black programs

manager reporting to Rogers.  Rogers admitted that his behavior
was unacceptable but he continued to subject the plaintiff to
harassment.  The plaintiff informed Rogers's manager and Human
Resources of the harassment and interference he experienced, but
Sikorsky did not take any action.

On March 1, 2012, at the plaintiff's request, he
transferred to Pratt & Whitney but the harassment and
interference continued.  The plaintiff wrote a letter to United
Technologies Corporation ("UTC"), which manages common IT
functions and resources for all divisions, including Sikorsky
and Pratt & Whitney, to seek relief, but no action was taken and
the harassment and interference intensified.  In or around
September 2012, the plaintiff began to experience severe
migraines, which eventually led to a partial impairment in his
right eye.  On August 15, 2013, the plaintiff was terminated
from his employment at Pratt & Whitney.[1]

## II.  Legal Standard

### A.  Fed. R. Civ. P. 12(b)(1)

A claim is properly dismissed for lack of subject matter
jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when
the court lacks the statutory or constitutional power to
adjudicate the claim.  See Nowak v. Ironworkers Local 6 Pension

---

[1] The Amended Complaint alleges that the plaintiff was terminated on August 15, 2012 (see Am. Compl., ¶ 50), but the court takes this to be a scrivener's error.

Fund*,* 81 F.3d 1182, 1187 (2d Cir. 1996).  On a Rule 12(b)(1)

motion to dismiss, the party asserting subject matter

jurisdiction "bears the burden of proving subject matter

jurisdiction by a preponderance of the evidence."  Aurechione v.

Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

When reviewing a motion to dismiss for lack of subject matter

jurisdiction, the court may consider evidence outside the

pleadings.  See Makarova v. United States, 201 F.3d 110, 113 (2d

Cir. 2000).

### B.    Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), the

court must accept as true all factual allegations in the

complaint and must draw inferences in a light most favorable to

the plaintiff.  See Scheuer v. Rhodes*,* 416 U.S. 232, 236 (1974).

Although a complaint "does not need detailed factual allegations,

a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  Bell Atlantic Corp. v. Twombly*,*

550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265,

286 (1986) (on a motion to dismiss, courts "are not bound to

accept as true a legal conclusion couched as a factual

allegation")).  "Nor does a complaint suffice if it tenders

naked assertions devoid of further factual enhancement."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

550 U.S. at 557 (internal quotation marks omitted)).  "Factual

allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all allegations in the

complaint are true (even if doubtful in fact)."  Twombly, 550

U.S. at 555 (citations omitted).  However, the plaintiff must

plead "only enough facts to state a claim to relief that is

plausible on its face."  Id. at 570.  "The function of a motion

to dismiss is 'merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might

be offered in support thereof.'"  Mytych v. May Dep't Store Co.,

34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy

Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779

(2d Cir. 1984)).  "The issue [on a motion to dismiss] is not

whether [the] plaintiff will prevail, but whether he is entitled

to offer evidence to support his claims."  United States v. Yale

New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990)(citing

Scheuer, 416 U.S. at 232).

III. Discussion

   A.   Counts One, Two and Four

   "Under Title VII and the ADEA, a plaintiff can sue in

federal court only after filing timely charges with the EEOC."

McPherson v. New York City Dep't of Ed., 457 F.3d 211, 213 (2d

Cir. 2006).  Similarly, as a prerequisite to bringing a CFEPA

claim, the plaintiff must first receive a release of
jurisdiction from the Connecticut Commission on Human Rights and
Opportunities ("CHRO").  See Anderson v. Derby Bd. of Ed., 718 F.
Supp. 2d 258, 271-72 (D. Conn. 2010).  Also, "[t]he CHRO is a
deferral agency under which it has a work-sharing arrangement
with the EEOC, whereby it is authorized to accept charges for
the EEOC.  Where both the EEOC and CHRO have jurisdiction, two
charges are taken so that the matter may be 'dual-filed,' thus
preserving both the state and federal rights of the charging
party."  Ortiz v. Prudential Ins. Co., 94 F. Supp. 2d 225, 230-
31 (D. Conn. 2000); see Rogers v. Makol, No. 3:13-cv-946 (JAM),
2014 WL 4494235, at *3 n.3 (D. Conn. Sept. 10, 2014) ("A
complaint filed with a state fair employment practice agency
such as the CHRO may be automatically dual-filed with the EEOC
if the two agencies participate in a worksharing agreement that
so authorizes.").

"The purpose of th[e] exhaustion requirement is to provide
notice to those alleged to have committed the violations and to
provide an opportunity for the parties to comply voluntarily
with the requirements of Title VII."  Maturo v. Nat'l Graphics,
Inc., 722 F. Supp. 916, 924 (D. Conn. 1989).  "Because these
charges generally are filed by parties not versed in the
vagaries of Title VII and its jurisdictional and pleading
requirements, [the Second Circuit has] taken a flexible stance

in interpreting Title VII's procedural provisions . . . so as

not to frustrate Title VII's remedial goals." Johnson v. Palma,

931 F.2d 203, 209 (2d Cir. 1991) (internal quotation marks and

citation omitted).  Thus, "[a] limited exception to the

exhaustion requirement permits an action against a party not

named as a respondent in the EEOC complaint if the underlying

dual purposes of the exhaustion requirement are otherwise

satisfied."  Maturo, 722 F. Supp. at 925.

In determining whether the identity of interest exception

applies, the Second Circuit has recognized four factors that

should be considered:

> 1) whether the role of the unnamed party could through
> reasonable effort by the complainant be ascertained at
> the time of the filing of the EEOC complaint; 2)
> whether, under the circumstances, the interests of a
> named [party] are so similar as the unnamed party's
> that for the purpose of obtaining voluntary
> conciliation and compliance it would be unnecessary to
> include the unnamed party in the EEOC proceedings; 3)
> whether its absence from the EEOC proceedings resulted
> in actual prejudice to the interests of the unnamed
> party; 4) whether the unnamed party has in some way
> represented to the complainant that its relationship
> with the complainant is to be through the named party.

Johnson, 931 F.2d at 209-10.  "This multi-factor test is not a

mechanical one, and no single factor is dispositive." Zustovich

v. Harvard Maint., Inc., No. 08 CIV. 6856 (HB), 2009 WL 735062,

at *8 (S.D.N.Y. Mar. 20, 2009).  The test also has been adopted

by the Connecticut Appellate Court to apply in the context of

CHRO complaints.  See Malasky v. Metal Products Corp., 44 Conn.
App. 446, 454 (1997), cert. denied, 241 Conn. 906 (1997).

     "In addition to these four factors, numerous courts have
found that the Second Circuit in Johnson had also implied that
another consideration is relevant to the identity-of-interest
inquiry--whether, although not named as a respondent in the
caption, the defendant is named in the body of the charges as
having played a role in the discrimination."  Zustovich, 2009 WL
735062, at *8 (citing Tout v. Erie Cmty. Coll., 923 F. Supp. 13,
16 (W.D.N.Y. 1995)); accord Daniel v. T&M Protection Res., Inc.,
992 F. Supp. 302, 311-12 (S.D.N.Y. 2014); Hanley v. Chicago
Title Ins. Co., No. 12 Civ. 4418(ER), 2013 WL 3192174, at *5
(S.D.N.Y. June 24, 2013); Bridges v. Eastman Kodak Co., 822 F.
Supp. 1020, 1025 (S.D.N.Y. 1993); see Johnson, 931 F.2d at 210
(distinguishing a case in which the Ninth Circuit allowed a
defendant to be sued although not named in the agency complaint
because "several factual statements in the EEOC complaint could
be read to afford notice" from Johnson, where "[t]he factual
statements in Johnson's [agency] complaint do not implicate the
[defendant] in any way").  This consideration also is relevant
in the CHRO context.  In Malasky, as part of the court's
analysis of the identity of interest exception, the court
concluded that the unnamed individual was identified in the body
of the pro se plaintiff's CHRO complaint so that individual had

9

notice of the complaint and no prejudice resulted from the

plaintiff's failure to name that individual as a respondent in

the CHRO complaint.  See 44 Conn. App. at 454-55.

Finally, "[t]he 'identity of interest' exception to the

exhaustion requirement has been held to apply only when

plaintiffs were not represented by counsel at the time they

filed their administrative discrimination charges."  Peterson v.

City of Hartford, 80 F. Supp. 2d 21, 24 (D. Conn. 1999).[2]

Sikorsky contends that the plaintiff did not file a CHRO

complaint or an EEOC complaint against it because neither

complaint named Sikorsky as a respondent.  The court concludes

that the dual purposes of providing notice and an opportunity

for voluntary compliance have been satisfied and the plaintiff

is not barred from pursuing Counts One, Two and Four against

Sikorsky.

The first factor under the identity of interest exception

weighs slightly in favor of Sikorsky because the plaintiff could

easily have named Sikorsky as a respondent in the portion of his

agency complaints that is the equivalent of a case-caption.

However, here it is apparent based on the allegations in the

agency complaints that the plaintiff intended for Sikorsky to be

---

[2] There appears to be a lack of agreement by district courts in the Second
Circuit on the issue of whether the exception applies if a plaintiff is
represented by counsel during agency proceedings.  See Senecal v. B.G.
Lenders Service LLC, 976 F. Supp. 2d 199, 214-215 (N.D.N.Y. 2013) (discussing
different approaches).

a respondent because the plaintiff named Sikorsky in the body of the complaints, explained what Sikorsky's role was, and identified at least one Sikorsky employee who had discriminated against him.  He simply failed to name Sikorsky as a respondent. The reasonable inference is that the plaintiff failed to name Sikorsky as a respondent because he is not versed in the pleading requirements.

With respect to the second factor, in analyzing whether there is a similarity of interest between a parent company and subsidiary as to conciliation and compliance, the Second Circuit places emphasis on whether there is a centralized control of labor relations between them.  See Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1242 (2d Cir. 1995) (concluding the identity of interest exception applied and the interests of the parent company and its subsidiary were identical as to conciliation and compliance because the parent company approved all personnel decisions at its subsidiary).[3]  Here, the plaintiff alleges that Sikorsky and Pratt & Whitney are divisions under UTC, that at his request, he transferred from Sikorsky to Pratt & Whitney, which is another division of UTC, that he wrote a letter to UTC to seek relief from the harassment and interference he had experienced, and that UTC "manages . . . resources for all

---

[3] Other factors include interrelation of operations, common management, and common ownership and financial control.  See Cook, 69 F.3d at 1240.

11

divisions, including Pratt & Whitney and Sikorsky Aircraft."

(Am. Compl., ¶37.)  Thus, reading the allegations in a light

most favorable to the plaintiff, there is a centralized control

of labor relations between UTC and its subsidiaries such that

UTC and Sikorsky have identical interests as to conciliation and

compliance.  Thus, the second factor weighs in favor of the

plaintiff.

The third factor also weighs in favor of the plaintiff.

Sikorsky is named in the body of the agency complaints.  In the

factual allegations of the plaintiff's CHRO affidavit, he states

that "I was hired by the Respondent on or around November 13,

2000 by Sikorsky as a software engineer.  I was transferred to

Pratt & Whitney on March 1, 2012."  (Defendant's Memorandum of

Law ("Def.'s Mem."), Ex. A, Doc. No. 21-2.)  The affidavit

further states that "[t]his pattern of ongoing and continuing

harassment began in 2009 when I expressed interest in a

management position . . . ."  (Id.)  The affidavit also

identifies persons at Sikorsky the plaintiff claims harassed him

because of his race.  Thus, the plaintiff's CHRO complaint puts

Sikorsky on notice that the plaintiff claims that Sikorsky

discriminated against him.

Similarly, while the plaintiff lists United Technologies

7323 as the employer on his EEOC Charge of Discrimination form,

the plaintiff states on page 2 of the form that "I have been

employed with the respondent since January 13, 2000 as a

Software Engineer. . .   A pattern of ongoing and continuing

harassment began in 2009 . . . .   Th[ese] practices continued

even after I transferred from Sikorsky to Pratt &

Whitney . . . ."   (Def.'s Mem., Ex. B, Doc. No. 21-2, at 2.)

The plaintiff's EEOC Intake Questionnaire also lists "United

Technologies Corporation - Sikorsky Aircraft Corporation" as a

separate employer and includes his dates of employment.

Moreover, in his answer as to why the plaintiff believed his

employer's actions were discriminatory, he explained that "[t]he

issues started when I applied for a management position[.]

Donald Rogers told me I had no chance and discouraged me from

applying for the position pointing out that there were no

bla[c]k managers . . . ."  (Plaintiff's Amended Memorandum of Law,

Doc. No. 35-1 ("Pl.'s Am. Mem."), Ex. C, Doc. No. 35-2, at 2.)

Rogers was the plaintiff's manager while he was at Sikorsky.   In

addition, the EEOC reissued its Notice of Right to Sue to use

the "corrected name" of the respondent: "United Technologies

Corporation – Pratt & Whitney and Sikorsky Aircraft Corp."   (Id.,

Ex. A, Doc. No. 35-2).   Thus, the EEOC's understanding appears

to be that Sikorsky is a respondent in the plaintiff's EEOC

complaint.

        The fourth factor also weighs in favor of the plaintiff.

The plaintiff alleges in his amended complaint and in his CHRO

complaint that he wrote to UTC concerning the harassment and interference to which he had been subjected at Sikorsky to seek relief, and the plaintiff alleges in the amended complaint that UTC manages "resources for all divisions" including Sikorsky. (Am. Compl., ¶ 37.)  It appears that the plaintiff believed that UTC had the ability to remedy the conduct of employees at Sikorsky.  It does not appear that Sikorsky has taken any step to correct any misconception on the part of the plaintiff concerning the relationship between UTC and Sikorsky.  Moreover, until February 5, 2015, Sikorsky continued to be represented in this action by the same counsel who received a copy of the EEOC's original Notice of Right to Sue letter, which names UTC as the respondent.  Thus, Sikorsky in substance represented to the plaintiff that its relationship with him in the administrative proceedings was to be through UTC.

In addition, Sikorsky does not dispute the plaintiff's assertions that Sikorsky "filed an Answer and Special Defenses to the CCHRO complaint on August 6, 2013.  The Defendant also filed an Answer to the EEOC complaint on December 13, 2013." (Pl.'s Am. Mem., at 2.)  Finally, nothing in the documents submitted by the parties concerning the plaintiff's agency complaints suggests that he was represented by counsel during the administrative process.

Under these circumstances, the court concludes that the identity of interest exception applies and the dual purposes of the exhaustion requirement, i.e. notice and an opportunity for voluntary compliance, have been served with respect to Sikorsky. Therefore, the plaintiff may proceed with Counts One, Two and Four against Sikorsky.

### B.    Count Three

To state a claim for intentional infliction of emotional distress, the plaintiff must allege: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  Appleton v. Bd. of Ed. of Town of Stonington, 254 Conn. 205, 210 (2000) (quoting Petyan v. Ellis, 200 Conn. 243, 253 (1986)).  Liability for intentional infliction of emotion distress

> has been found only where the conduct has been so
> outrageous in character, and so extreme in degree, as
> to go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a
> civilized community. . . . Conduct on the part of the
> defendant that is merely insulting or displays bad
> manners or results in hurt feelings is insufficient to
> form the basis for an action based upon intentional
> infliction of emotional distress.

15

Carrol v. Allstate Ins. Co., 262 Conn. 433, 443 (2003) (internal citations and quotation marks omitted). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." Appleton, 254 Conn. at 210.

To the extent that the plaintiff is alleging that the harassment and interference was due, in part, to his race and age, such allegations do not establish extreme and outrageous conduct because "[i]n the employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme or outrageous." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000).

Nor do the other allegations satisfy the requirements for extreme and outrageous conduct. See Jamilik v. Yale Univ., No. 3:06cv0566 (PCD), 2007 WL 214607, at *4 (D. Conn. Jan. 25, 2007) (holding that requirements for extreme and outrageous conduct were not satisfied by allegations of defendant-employer implementing demeaning and intrusive ways of interfering with plaintiff's ability to do her job); Lorenzi v. Connecticut Judicial Branch, 620 F. Supp. 2d 348, 353 (D. Conn. 2009) (holding that allegations of demeaning and unprofessional speech, unfair job appraisals, denial of pay raises and promotions, discrimination on the basis of race, and retaliation for

16

complaining about such discrimination do not meet the standard for finding that conduct was extreme and outrageous);  Appleton, 254 Conn. at 210-12 (holding that allegations that a principal made condescending remarks to a teacher in front of the teacher's colleagues, telephoned the teacher's daughter to say the teacher was acting differently, called the police who then escorted the teacher from the building, and asked the teacher to take two psychiatric examinations did not constitute extreme and outrageous conduct); Tracey v. New Milford Pub. Sch., 101 Conn. App. 560, 567-70 (2007) (holding that requirements for extreme and outrageous conduct were not satisfied by allegations of a pattern of harassment, intimidation, and defamation in the workplace); Carnemolla v. Walsh, 75 Conn. App. 319, 331-33 (2003) (holding that requirements for extreme and outrageous conduct were not satisfied by allegations that the defendants-employers accused the plaintiff-employee of embezzlement and requested that she sign resignation and release forms).

## IV.  Conclusion

Accordingly, Defendant Sikorsky Aircraft Corporation's Motion to Dismiss (Doc. No. 21) is hereby GRANTED in part and DENIED in part.  Count Three of the Amended Complaint is dismissed as to Sikorsky Aircraft Corporation.

It is so ordered.

18

      Signed this 26th day of February 2015 at Hartford,

Connecticut.


                                    _____/s/_____
                                    Alvin W. Thompson
                                 United States District Judge